**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**UNITED STATES OF AMERICA**

       -   against -

**08 Cr. 1220 (PKC)**

**JOHN A. GOTTI,**

                **Defendant.**
-------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF**
**JOHN A. GOTTI'S APPLICATION FOR BAIL PENDING TRIAL**

**STATEMENT OF FACTS**

**A.**      **Introduction**

On August 5, 2008, the government arrested Gotti at his home on Long Island where he resides with his wife and six children. Later that day, the government moved for Gotti's detention pending trial. Magistrate Judge Ronald L. Ellis, Southern District of New York, granted that application upon finding that Gotti had not overcome the presumption that no condition or combination of conditions could reasonably assure the safety of the community. 18 U.S.C. § 3142 (e). As we demonstrate below, that finding is in error and, therefore, pursuant to 18 U.S.C. § 3145 (b), we seek revocation of the detention order.

We submit that Gotti unquestionably merits bail in light of **(1)** his prior history of compliance with bail conditions; **(2)** the government's prior inaccurate claims regarding his alleged danger to the community; **(3)** the strong evidence that he is no longer associated with organized crime; **(4)** his successful completion of his supervised release; and **(5)** the fact that he poses no risk of flight.

**B.    1998-2004: Gotti Honored Bail Conditions and Withdrew from Organized Crime**.

In January 1998, the government indicted Gotti on RICO charges. Based on the government's argument that he was a danger to the community, the Court detained him. After ten months, however, in October 1998 the Court released Gotti on bail. He remained on bail without incident for a year during which time he accepted responsibility for his actions, pled guilty, was sentenced, and ultimately voluntarily surrendered to serve his 77-month sentence.

At the time of his guilty plea in the 1998 action, Gotti made explicit that in so doing he sought finality and closure—in other words, he wished to leave his former life behind. Exhibit A, Transcript of Plea, dated April 5, 1999, ("Plea Trans.") at 28-29, 35-36. In furtherance of that objective, he took affirmative steps to disassociate himself from his former life, including communicating his intentions in a videotaped meeting to his father (reputedly the boss of the Gambino family) and other alleged co-conspirators.

Nonetheless, the government—unwilling to accept that Gotti had in fact withdrawn from his former life—wiretapped communications between Gotti and his friends, family, and even his lawyer for 14 months (from March 2003 – May 2004) while Gotti was incarcerated in connection with the 1998 case. Contrary to the government's hopes, however, those wiretapped conversations only confirmed that Gotti had indeed withdrawn from the charged enterprise and renounced his criminal past. In fact, on more than one occasion the government intercepted Gotti stating as much. For example, on September 5, 2003, the government intercepted a conversation between Gotti and John Ruggiero in which Gotti explained that he had not had contact with his former associates in six years:

> John, I haven't seen or heard from them in six years. My Uncle Richie was here, about two and a half, three years ago, for the last, the last time I ever seen the guy, and it was only, the time he came to visit me, John, it was because I wanted to

2

> know about my father's funeral arrangements, what my father's wishes were, and about my mother. That's it, that's the only thing that was discussed on the visit.

Title III Intercept at FCI Raybrook, September 5, 2003.

Similarly, on February 7, 2004, the government again intercepted Gotti explaining that it had been more than six years since he renounced his past:

> I'm a nobody. I walked away from this six and a half years ago, I've been doing nothing for six and a half years. I've been stranded on an island by myself.

Title III Intercept at FCI Raybrook, February 7, 2004. When the government intercepted the above-quoted statements, any remaining doubt regarding whether Gotti had in fact disavowed his prior existence should have been erased. Unfortunately, such was not the case.

### C. 2004-2007: The Government Failed to Convict Gotti in Three Trials, Gotti Again Honored His Bail Conditions and Completed Supervised Release Without Incident.

Undeterred by the evidence of Gotti's withdrawal from organized crime, in July 2004, six weeks before the completion of his sentence in the 1998 case, the government again indicted Gotti on RICO charges. In September 2004, when Gotti completed his 1998 sentence and it was time for the government to release him, the government instead once again stood before the Court, waved an indictment, and claimed that it had evidence that he was a danger to the community. Based upon that representation, Gotti was detained unnecessarily for an entire year until the conclusion of the government's first failed effort to convict him.

In September 2005, the jury (in the first of what turned out to be three trials) reported that it was deadlocked. At that point, the Court declared a mistrial and released Gotti on bail. Despite the government's warnings that Gotti would endanger the community if released, Gotti remained on bail for a year during the course of two more trials without even a claim that he had violated a single condition of his release.

Finally, in September 2006, after three successive mistrials in which Gotti defended himself on the basis of his withdrawal from the enterprise, the government itself effectively conceded that its evidence was insufficient to prove that Gotti remained a member of organized crime and discontinued prosecution of the 2004 case against him. Thereafter, Gotti remained on supervised release until September 2007, which he completed without any indication that he posed a risk of danger to the community. Indeed, throughout that period he dutifully reported to his Probation Officer even random contact no matter how slight with people with whom he was not permitted to associate. *See e.g.*, Exhibit B, Letter from John A. Gotti to United States Probation Officer Edward Kanaley, dated June 22, 2007.

**D.    2007-2008: New Evidence of Gotti's Withdrawal From Organized Crime Revealed**.

Since that time, additional evidence has come to light that further supports that Gotti has extricated himself from his former life. For example, Lewis Kasman, a cooperating witness, recorded conversations with individuals whom the government has identified as being in leadership positions in organized crime. Far from discovering evidence of Gotti's continued participation in organized crime, however, those individuals instead told Kasman that Gotti is no longer among their ranks.

In one such conversation, in 2006, Kasman feigned concern about the possibility that Gotti might interfere in a business in which Kasman and the individual with whom he was speaking were involved. In response, the individual plainly supported the fact that Gotti had withdrawn from the enterprise and that Gotti had communicated his withdrawal to those the government charged as his co-conspirators when he told Kasman that Gotti was "gone" and "forgotten about."

Additionally, in February of 2008, the government indicted 62 alleged members and associates of the Gambino family including three whom it claimed to constitute the leadership of that family. Gotti was not among them. *United States v. Agate*, 08-cr-76 (JBW) (E.D.N.Y. 2008). Moreover, the *Agate* case was based in large part on three years of consensual recordings made by cooperating witness Joseph Vollaro. Yet Vollaro did not once meet with Gotti or anyone who purported to speak on his behalf.

Thus the government's recent efforts to develop evidence regarding those actively involved in organized crime indicates that Gotti is not to be counted in that group.

### E.      August 2008: Gotti Indicted in Current Action.

Now, the government has yet again charged Gotti in a wide-ranging RICO indictment spanning several decades. Exhibit C, Indictment 08-cr-1220 (PKC) (the "Indictment"). Despite all of the above, the government still maintains that Gotti should not be permitted bail pending trial because he poses both a danger to the community and a risk of flight. The evidence supports neither claim.

## ARGUMENT

## THE COURT SHOULD RELEASE GOTTI ON BAIL.

Gotti poses neither a danger to the community nor a risk of flight and the Court should, therefore, release him on bail so that he can participate actively in his defense. The Bail Reform Act, 18 U.S.C. § 3141, *et seq*, lists four factors that a court must consider to determine whether the release of a defendant would present an unreasonable danger to the community or an unacceptable risk of flight: (a) the nature and circumstances of the offense charged, (b) the weight of the evidence against the defendant, (c) the history and characteristics of the defendant,

and (d) the nature and seriousness of the danger posed by the defendant's release. 18 U.S.C. § 3142(g).

In addition, because the government has charged Gotti with RICO conspiracy in violation of 18 U.S.C. §1962(d), there is a presumption that Gotti poses a danger to the community. 18 U.S.C. §3141 (e). To rebut this presumption, however, Gotti need only produce some evidence to the contrary following which the government retains the burden to demonstrate by clear and convincing evidence that Gotti poses a danger to the community and by a preponderance of the evidence that he is a risk of flight:

> In a presumption case such as this, **a defendant bears a limited burden of production—not a burden of persuasion**—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight. Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.
>
> **Even in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence** that the defendant presents a danger to the community. The government retains the ultimate burden of persuasion by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight.

*United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (internal citations omitted) (emphasis supplied).

As we demonstrate below, there is ample evidence to rebut the presumption that Gotti presents a danger or a risk of flight. Thus, because each of the above-listed factors (including whatever weight the Court deems appropriate for the rebutted presumption) overwhelmingly supports the conclusion that Gotti is entitled to be released on bail, we respectfully submit that the Court should revoke the order of detention and discharge Gotti.

A.  **<u>Gotti Is Not a Danger to the Community</u>**.

    **1.  The Nature of the Offense and Weight of the Evidence Support Release on Bail.**

As noted above, the government has charged Gotti with a single count of RICO conspiracy in violation of 18 U.S.C. §1962 (d).  Exhibit C, Indictment.  As a generic proposition this charge is serious.  On the question of whether Gotti poses a danger to the community, however, it does not weigh in favor of detention here.

The government's claim of dangerousness is based upon **(a)** stale allegations dating back 18 years to 1991 (there are no recent allegations of violence against Gotti) and, **(b)** the generalized claim that high-ranking members of organized crime are presumptively dangerous.

    **a.  The government's stale allegations of violence do not support detention.**

With respect to the specific allegations of violence in this case, the government alleges that Gotti is responsible for three murders: the murder of George Grosso in 1988; the murder of Louis DiBono in 1990; and the murder of Bruce John Gotterup in 1991.  Exhibit C, Indictment at 18-19.  First, allegations that Gotti is responsible for violence 18 years ago are of little value in determining what danger if any Gotti now poses.  Second, the weight of the evidence with respect to these charges supports Gotti's release.

Two of the three murders (Grosso and DiBono) occurred at a time when John J. Gotti ("Gotti Sr.")[1] (defendant's father and the reputed boss of the Gambino family) had not yet been incarcerated.  By 1991, however, Gotti Sr. was in jail along with his second-in-command, Salvatore Gravano.  Shortly thereafter, Gravano became a cooperating witness and testified against Gotti Sr. and numerous others.

---

[1] Defendant herein is John A. Gotti and his father is John J. Gotti.  For ease of reference, though not technically accurate, we refer to the father as "Gotti Sr." and to defendant as either "Gotti" or "defendant."

7

Notably, the government charged Gotti Sr. with the DiBono murder and Gravano testified in detail about that murder. Moreover, Gravano testified in the trials of several others accused of that murder. Yet despite his high rank in the Gambino family and his professed knowledge of the DiBono murder, Gravano has never implicated Gotti in that crime.

Similarly, Gravano did not implicate Gotti in the Grosso murder. Gravano's failure to implicate Gotti in this crime is particularly important because the government has tied this murder, which occurred on December 20, 1988, to Gotti's induction into the Gambino family, which the government maintains occurred four days later on December 24, 1988. This point is significant because the government has offered evidence in prior proceedings that it was none other than Gravano himself who presided over Gotti's induction ceremony. Thus, if the Grosso murder were in fact tied to Gotti's induction into the Gambino family as the government posits, one would have to conclude that Gravano—the number two man in the family and the person who presided over Gotti's induction ceremony—would have known of Gotti's participation in that murder and would have implicated him when he began to cooperate. He did not.

Furthermore, in 1994, Dominick Borghese, a person who the government claims was a member of Gotti's "crew," became a cooperating witness. He has not implicated Gotti in any of the three alleged murders.

Perhaps most telling, in 2002, Michael DiLeonardo, a onetime captain in the Gambino family, became a cooperating witness. DiLeonardo testified in each of Gotti's three trials as well as in several others and swore that in the world of organized crime there was no one closer to Gotti than he was. DiLeonardo has not implicated Gotti in any of the three murders now alleged.

In addition, the government concedes that there is no forensic evidence to support the charges.

The natural question then is what evidence will the government offer to support these charges. The indication is that the government bases its claims upon the statements of two individuals who claim to have been "associates" of the Gambino family, that is, not full-fledged members of the enterprise. Thus, despite the countless cooperators who were *bona fide* members of the enterprise, the government claims that two underlings possess evidence unknown to the highest-ranking members of the organization regarding the culpability of the boss's son in the most serious crimes of his career. We submit that the government's position will prove untenable and, in any case, plainly demonstrates that the evidence weighs in favor of bail.

>    **b. The evidence that Gotti withdrew from organized crime supports release on bail**.

In apparent recognition that the specific allegations of violence contained in the indictment do not support detention, and in spite of the fact that the government knows full well that Gotti does not hold a leadership position in the Gambino family at this time, the thrust of its detention letter is that high-ranking members of organized crime are routinely detained based on their leadership roles. Exhibit D, Letter from A.U.S.A. Ellie Honig to the Honorable Ronald L. Ellis, dated August 5, 2008 ("Honig Ltr."). Be that as it may, that practice has no bearing here. Gotti does not now hold a leadership position and the government will not produce any evidence to the contrary.

In this case, as in the previous three trials, the government will undoubtedly struggle to cobble together some attenuated theory with which it will attempt to defeat Gotti's defense that he withdrew from the charged conspiracy and renounced his former life of crime. Any claim that Gotti remains an active member of organized crime, however, is belied by the evidence.

As set forth above, at the time of his guilty plea in 1999, Gotti indicated that he sought finality and closure. Exhibit A, Plea Trans. at 28-29, 35-36. He also communicated his desire to

9

withdraw from the enterprise to Gotti Sr. in a videotaped meeting and to several other of his alleged co-conspirators.

Subsequently, while serving his sentence for his 1998 case, the government wiretapped Gotti for 14 months and intercepted several conversations in which Gotti indicated to individuals whom the government has identified as his criminal associates that he had in fact withdrawn from the enterprise and renounced his former life of crime.

Nevertheless, in 2004, the government again indicted Gotti in a RICO action. In three successive trials Gotti defended himself on the basis of his withdrawal from the charged enterprise, and in each instance the jury was unable to reach a verdict. Ultimately, the government itself determined that it could not meet its burden and discontinued prosecution of that indictment—if it truly believes in the strength of its evidence that Gotti represents a danger, one would have to assume that it would have sought to try him a fourth time rather than leave the community at risk. Its failure to do so suggests that its effort to detain him now is born of a desire to disadvantage him as he tries to defend himself rather than to protect the community from danger.

In the face of all of the evidence that Gotti is no longer a member of organized crime as well as the government's own inability to convince three separate juries that he remains a member of organized crime, the government nonetheless claims that Gotti should be detained because leaders of organized crime are routinely held without bail. Exhibit D, Honig Ltr. at 4-5. None of the cases that the government cites, however, addresses a circumstance similar to the one at bar.

It is true that individuals accused of holding leadership positions in organized crime are frequently detained. In a case such as this one, however, in which the government has three

10

times failed to persuade a jury that Gotti remains a member of organized crime, any presumption of detention must surely give way to the evidence to the contrary. Gotti already endured a year of what amounts to punitive incarceration in 2004 based largely upon the presumption against the release of organized crime leaders. It cannot be that, despite the government's inability to convince three separate jury's that Gotti remains a member of organized crime, the government need only reiterate the same allegation to support his detention now.

In our view, the government's hollow pronouncement that organized crime figures are routinely detained does not support Gotti's detention here. Accordingly, the nature of the offense charged and the weight of the evidence plainly tip the scale in favor of bail.

**2. Gotti's History and Characteristics Support His Release on Bail**.

Gotti has a history of complying with bail conditions. In the 1998 case, after ten months of detention, the Court released Gotti on bail. He remained free on bail for one year during which time he did not violate any of the conditions of his release. Subsequently, in 2005, when the first of three juries reported that it was deadlocked, the Court declared a mistrial and released Gotti on bail. He remained on bail for another year during the course of two additional trials without a single infraction. Thereafter, Gotti completed the remainder of his term of supervised release from the 1998 case without any indication that he posed the slightest danger to the community.

Now, ten years since his first case—in which the Court granted him bail in the absence of the mountain of evidence that now exists regarding his withdrawal from the enterprise and his now firmly established history of compliance with bail conditions—the government still maintains that he should be detained. The government's position—unsupportable on neutral

grounds—can only be understood as a strategic effort to disadvantage Gotti in his effort to vindicate himself.

We, therefore, submit that Gotti's history and characteristics support his release on bail.

### 3. Gotti Has Overcome the Presumption of Dangerousness and Demonstrated that His Release Does Not Pose a Danger.

There is no direct evidence that Gotti poses any danger whatsoever. Indeed, the evidence clearly indicates the contrary. He has twice been released on bail for long periods of time without any adverse consequences. The government, therefore, of necessity relies upon the putative presumption that organized crime leaders are routinely detained. The government's failure to persuade three separate juries that Gotti continues to be a member of organized crime—much less a leader—however, should eliminate this argument.

Since the Court last granted Gotti bail, the evidence in favor of releasing him has only increased. Cooperating witness Joseph Vollaro failed to uncover evidence of Gotti's involvement in organized crime, and cooperating witness Lewis Kasman actually produced evidence that supports the fact that he withdrew from the enterprise. He has completed a term of supervised release and he has lived as a member of his community without incident.

Apart from generalizations regarding organized crime figures, the government offers no evidence that Gotti poses a danger and there is a simple reason for its failure—none exists.

### B.    Gotti Is Not a Risk of Flight.

All of the facts articulated above similarly demonstrate that Gotti is not a risk of flight. In addition, we note that in its previous attempts to deny Gotti bail, the government conceded that Gotti did not pose a risk of flight and instead based the entirety of its applications for detention on his alleged danger to the community. In this case, however, the government maintains that because Gotti now faces a life sentence, his risk of flight is great. This argument

is nonsensical.  By the government's calculation, Gotti faced in excess of 100 years in prison in his prior trials and yet he stood fast and defended himself.  There is no practical difference between a 100-year sentence and a life sentence.

As discussed above, the Court released Gotti on bail in 1998 and 2005, and in each instance he never failed to appear in court; this time will be no different.  Indeed, his confidence is all the greater now that he has thrice thwarted the government's misguided attempts to imprison him.

What is more, during the six-month period preceding this indictment there were several news reports that the government intended to bring these charges.  *See e.g.*, Exhibit E, "Feds Still Have Junior in Their Sights," Ganglandnews.com, February 14, 2008.  Yet Gotti made no attempt to flee.  He has a proven record of standing to face whatever fight is before him.

Gotti simply presents no risk of flight.

C.      **Gotti Can Post Adequate Security To Ensure Compliance With His Bail Conditions**.

Gotti is prepared to secure his bail with the homes of family members valued at several million dollars.  Thus, to the extent that the Court has any concern regarding whether Gotti will adhere to the conditions of release—and we suggest that it should not—there will be considerable elements of financial and moral suasion in place to alleviate those concerns.

* * *

When one compares Gotti's record of complying with the conditions of his release with that of the government in making unrealized claims regarding his danger to the community, we submit that the scale of relative credibility tips sharply in favor of Gotti.

**CONCLUSION**

For the foregoing reasons, we respectfully submit that the Court should revoke the detention order issued by Magistrate Judge Ellis and release Gotti on bail pending trial.

Dated: January 5, 2009
New York, New York

Respectfully submitted,

_____/s/_____
CHARLES CARNESI
Attorney at Law
1225 Franklin Avenue, Suite 325
Garden City, NY 11530
516-512-8914
cfcarnesi49@aol.com

_____/s/_____
SETH GINSBERG
Attorney at Law
225 Broadway, Suite 715
New York, NY 10007
212-537-9202
srginsberg@mac.com

*Attorneys for John A. Gotti*