UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,                            :
                                                     :
            - v.-                                    :
                                                     :
JOHN A. GOTTI,                                       :      08 Cr. 1220 (PKC)
                                                     :
            Defendant.                               :
                                                     :
------------------------------------------------------------x

## GOVERNMENT'S OPPOSITION TO DEFENDANT JOHN A. GOTTI'S MOTION FOR RECONSIDERATION OF BAIL

The Government respectfully submits this memorandum in opposition to Gotti's Motion for Reconsideration of Bail, dated June 27, 2009 (the "Motion"). The Motion marks Gotti's third attempt to obtain bail in this case; he has previously been denied bail by Magistrate Judge Ellis, on August 5, 2008, and by this Court, on January 15, 2009.

Gotti offers nothing new here to justify reconsideration of his bail status. The In fact, since the Court's prior ruling denying Gotti's request for bail, the Government has provided the Court and the defense with further specifics on five separate categories of crimes in which Gotti has participated within the five-year limitations period – any one of which, alone, overcomes Gotti's fabricated withdrawal defense. Gotti conspicuously fails to offer any cogent response to the Government's disclosure of these crimes.

Now, as before, Gotti poses both a risk of flight and a danger to the community. Gotti raises no new facts to undermine this Court's prior finding that he poses a risk of flight. The Government has, if anything, now provided more detail than before as to the serious danger that Gotti poses if released. Gotti has, over the course of decades, demonstrated the means and

the willingness to kill to protect himself and the Gambino Family. Gotti also has demonstrated an alarming expertise in manipulation of the justice system. He has repeatedly coordinated and supervised the Gambino Family's often-successful efforts to intimidate, bribe, and threaten witnesses; to bribe and control law enforcement officers; to suborn perjury; and to tamper with grand juries and trial juries, at times successfully. In sum, the relevant bail factors, coupled with the statutory presumption of detention, make plain that Gotti's continued detention is necessary, as Magistrate Judge Ellis and this Court have previously held.

A.     **The Prior Bail Proceedings**

1.     **August 5, 2008 Bail Proceeding**

Gotti was arrested on August 5, 2008, and was presented before Magistrate Judge Ronald L. Ellis of the Southern District of New York the same day.[1] The defense argued for bail, on essentially the same grounds Gotti urges here – primarily, that Gotti had been released on bail in prior cases, that Gotti had withdrawn from the Gambino Family, and that the Government's evidence is weak. (A copy of the transcript of the August 5, 2008 bail proceeding is attached as Exhibit A to this memorandum). Magistrate Judge Ellis rejected each of Gotti's arguments, and found that the statutory presumption in favor of detention in cases involving crimes of violence had not been overcome. (Exh. A, Tr. at 23-24). Judge Ellis therefore ordered Gotti remanded without bail. (Id.)

2.     **January 15, 2009 Bail Proceeding**

On January 15, 2009, Gotti again sought bail, this time before the Court. A copy

---

[1]     Gotti was originally indicted on July 24, 2008 in the Middle District of Florida. The Indictment was transferred to this Court pursuant to Rule 21 in December 2008.

of the transcript of that bail proceeding is attached as Exhibit B to this memorandum. Gotti raised the same primary arguments he makes here. Gotti argued that the Government's proof was weak, primarily because the evidence comes largely from cooperating witnesses who have committed serious crimes (Exh. B, Tr. 32-33); that the drug charges were "a complete fiction" (Exh. B, Tr. 32); and that former cooperating witness Salvatore Gravano – who will not be a witness in the case here – had previously testified about the charged murder of Louis DiBono but not mentioned Gotti's participation in it. (Exh. B, Tr. 31-32). Gotti also posited that the Government's charges of ongoing money laundering and re-investment of racketeering proceeds would not succeed because the Government had, in a prior plea agreement with Gotti, agreed not to forfeit some (but not nearly all) of the properties at issue. (Exh. B, Tr. 34-35). Gotti argued that he had withdrawn from the mafia, and that he would raise the same defense at the trial here. (Exh. B, Tr. 36-37). Gotti's attorneys also argued that Gotti had been released on bail during a portion of his prior case, and that Gotti's release was necessary to prepare for trial. (Exh. B, Tr. 39-41). Gotti claimed that he had extensive ties to the community and would not flee. (Exh. B, Tr. 41-42).

This Court, after hearing both parties' positions, and after considering each of the relevant bail factors in turn, denied Gotti's motion for bail. The Court first found that the statutory presumption of bail pursuant to 18 U.S.C. § 3142(e) applied to the case here, and indeed, that Gotti had conceded the applicability of that presumption. (Exh. B, Tr. 43). With respect to the first statutory factor set forth in the Bail Reform Act, 18 U.S.C. § 3142(g), the Court found that:

> the defendant is charged with murder, cocaine trafficking, assault, robbery,

> kidnapping, witness tampering, jury tampering, extortion, loansharking, and gambling. And, again, in the case of the murders, there's no suggestion that it was by the defendant's hand that the murders took place but at the defendant's direction and with his acquiescence, knowledge, and participation. So I have considered the nature and circumstances of the crimes charged. They're serious. They provide a motive to flee. They also are charges that are based on an indictment, which necessarily means there was probable cause found to support the evidence. And they are crimes that involve violence and potential danger to the community.

(Exh. B, Tr. 44-45).

With respect to the second bail factor, this Court stated that it was difficult to assess the strength of the evidence at that point in the proceeding, but that the Government's charges appeared to be both strong and materially different from the charges in the prior case. (Exh. B, Tr. 45). Specifically, this Court noted the Government's representation that it had at least five witnesses to Gotti's participation in the charged drug trafficking offense, which carries a potential sentence of life imprisonment. (Exh. B, Tr. 46).

The Court next turned to the history and characteristics of the defendant. (Exh. B, Tr. 46). The Court noted that the defendant had strong family and community ties, and had reported as required in the past; on the flip side, the Court found that Gotti had previously sustained a serious felony conviction, and the Court recognized that Gotti was an admitted member of organized crime. (Exh. B, Tr. 37-38, 46).

The Court lastly assessed the nature and seriousness of the danger posed by Gotti to the community or any individual. (Exh. B, Tr. 46). The Court found that:

> there has been evidence of violence, or at least allegations of violence in the past, including three murders. There would be a motive to do harm to an individual and a capability of doing harm. As the Government points out, in the case of someone who is accused of being a leader, someone who is a leader, if they are able to prove that he is a leader, that individual would

have the capability of simply giving a direction that an act be done.

(Exh. B, Tr. 47). The Court therefore concluded that "at this stage of the game, I conclude that there is no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of any other person in the community." (Exh. B, Tr. 47). The Court noted that it had considered all of the factors de novo even though Magistrate Judge Ellis had already ruled on the bail issue, and that, should relevant facts change in the future, the Court may have a basis to reconsider its ruling. (Exh. B, Tr. 47).

**B.    Discussion**

In the Motion, Gotti points to nothing to undermine any of this Court's prior conclusions, or any of the facts underpinning those conclusions. If anything, the Government has since the Court's prior bail ruling provided more specificity and detail showing that Gotti poses a serious danger to the community, and that Gotti's withdrawal defense is a litigation-driven sham. Gotti remains a convicted violent felon, a convicted fraudster, and an admitted, longtime leader of the Gambino Family – a vicious, violent criminal enterprise that is unrelentingly committed to tampering with witnesses, juries, grand juries, and the judicial process generally. The Government has now detailed for the Court and the defense the fact that Gotti has directed and ordered at least three murders; has directly participated in three more murders; and has planned and discussed many more murders. The Government also has detailed the fact that Gotti coordinated the Gambino Family's efforts to obstruct justice for many years, and the fact that Gotti has long had, and still has to this day, a loyal legion of underlings and followers to pass communications and to carry out his commands.

The Government addresses the various legal and factual issues Gotti raises in the

Motion – virtually all of which have been previously addressed by the Court and the parties – in turn, below.[2]

### 1.   Strength of the Evidence

In its enterprise letters of June 15 and June 24, 2009, the Government laid out extensive details of Gotti's life of crime. Gotti attempts to take the fact that the Government has now disclosed the specifics of his remarkable lifetime of violence as support for his bail motion. (Motion at 5-7). As the enterprise letters make clear, however, Gotti has done two things consistently and without hesitation throughout his lifetime: he has killed others and plotted to kill others to protect himself and his mafia turf, and he has obstructed justice, as a matter of course, and in the most serious fashion.

With respect to the first point, as the Government has disclosed in its enterprise letters, Gotti has amassed a staggering body count. He has directed and ordered the murders of George Grosso, Louis DiBono, and Bruce John Gotterup. (June 15, 2009 Enterprise Letter at 3-6). Gotti stabbed and killed Daniel Silva by his own hand. (June 15, 2009 Enterprise Letter at 3-4). John Cennamo was murdered by the Gambino Family – which subsequently tried to make the death look like a suicide – to protect Gotti from prosecution for the Silva murder. (June 15, 2009 Enterprise Letter at 3-4). And Gotti participated as an accomplice to the murder of Willie

---

[2] Gotti begins by reciting the same litany of complaints about the Indictment, and the events leading to the Indictment, that he has raised in virtually every filing to date. (Motion at 1-4). Most recently, Gotti raised all of these points in his Motion to Dismiss the Indictment, dated May 29, 2009. On June 26, 2009, the Government filed its response to the Motion to Dismiss the indictment, which addresses each of these points in detail. In short, the record makes plain that the Indictment arose out of an independent investigation that almost entirely post-dated the dismissal of the 2004 case. The record also establishes that, despite Gotti's wishful thinking to the contrary, the case here involves conduct that is significantly more serious and extensive than the conduct in the prior case.

Boy Johnson. (June 15, 2009 Enterprise Letter at 4). Even beyond these six completed murders, Gotti has conspired and taken concrete steps towards murdering various competing drug dealers, as well as La Cosa Nostra members and associates including Dan Marino, John Gammarano, John Alite, Danny Fama, and Preston Geritano. (June 15, 2009 Enterprise Letter at 3-4).

Gotti's primary response is to take issue with the DiBono murder charge (while ignoring the other killings). (Motion at 21-22). Gotti argues that another cooperating witness at another trial, Salvatore Gravano, did not implicate Gotti in the DiBono murder. (Motion at 21-22). First, the testimony of another witness in another case is both irrelevant and inadmissible as hearsay. In any event, the Government will introduce evidence at trial that Gravano intentionally failed to disclose Gotti's participation in the DiBono murder to the Government because Gravano hoped that, by sparing John J. Gotti's son, John J. Gotti would not seek vengeance for Gravano's cooperation on an individual who was very close to Gravano.

Aside from the DiBono murder, Gotti is silent on the other charged murders, including the Grosso and Gotterup murders, as well as the other murders, conspiracies, and plots disclosed in the enterprise letters.

Gotti also conspicuously fails to address in any fashion the Government's disclosure in its enterprise letters of the details of Gotti's long history of obstruction of justice, bribery of local law enforcement officers, witness intimidation, and jury tampering. (June 15, 2009 Enterprise Letter at 9-10; June 24, 2009 Enterprise Letter at 2-3). In 1983, after Gotti killed Danny Silva, the Gambino Family murdered John Cennamo, an eyewitness who had spoken to the police about the incident. To cover their tracks, the Gambino Family tried to make the

7

murder appear to be a suicide. (June 15, 2009 Enterprise Letter at 2-3).[3] Gotti also has participated in bribery of local law enforcement officers and of lay witnesses to crimes committed by Gambino Family members. (June 15, 2009 Enterprise Letter at 11).

In the late 1980's and early 1990's, Gotti became the Gambino Family's point man for its varied and successful efforts to tamper with juries. Perhaps most notably, Gotti oversaw the successful effort to tamper with a jury sitting in the trial of Gambino Family members John Carneglia and Gene Gotti. Under Gotti's direction and supervision, the Gambino Family bribed one juror and intimidated another, leading to the dismissal of both jurors. (June 15, 2009 Enterprise Letter at 10-11). Demonstrating his single-minded determination to obstruct the criminal justice process, Gotti proceeded to direct the obstruction of the ensuing grand jury investigation of the jury tampering in the trial of John Carneglia and Gene Gotti. (June 15, 2009 Enterprise Letter at 10-11). Most recently, in 2005, Gotti conceived of and attempted to orchestrate a scheme whereby he and another powerful mafia member, Bonnano Family Boss Vincent Basciano, would direct mafia underlings to provide false testimony claiming that Gotti and Basciano had withdrawn from the mob. Not surprisingly, both Gotti and Basciano were careful to obtain mafia approval before pursuing this line of defense, given that it required an admission of the existence of the mafia, contrary to traditional La Cosa Nostra rules. (June 24, 2009 Enterprise Letter at 2-3).

---

[3]    Although Gotti has contended before this Court that he is entitled to purported Brady materials suggesting that Cennamo committed suicide,

(The Government will publicly file this memorandum on ECF with the relevant portion of the previous sentence redacted to protect the confidentiality of the subject matter). The Government will introduce cooperating witness testimony and lay witness testimony at trial to prove the same.

8

Gotti re-hashes the argument that much of his conduct dated back to the 1980's and 1990's. (Motion at 23). Indeed, Gotti spent essentially his entire career during those decades committing and overseeing crimes, up until his 1999 conviction for racketeering, extortion, and fraud crimes. During that time, Gotti repeatedly demonstrated that he has not only the means but also the willingness to stop at nothing – even murder – to protect himself, his wealth, and the Gambino Family. Gotti's crimes were no one-time deals; crime was Gotti's occupation for nearly his entire adult life spent at liberty. Gotti went to prison from 1999 until 2005. As happens for most mobsters, Gotti's criminality was slowed to some extent by the fact of his incarceration – but, as discussed in the Government's enterprise letters and below, Gotti's criminality by no means ceased. He continued to participate in various crimes – largely through his network of devoted messengers and followers – both while he was in prison, and after his release. (June 24, 2009 Enterprise Letter at 2-4). Gotti remains a danger to the public, and, if released, to the orderly and untainted trial of the matter before this Court.

### 2. Withdrawal

Gotti argues, as he has in both prior bail applications, that he has withdrawn from the mafia. (Motion at 8-14). In fact, the notion of Gotti's withdrawal is a post hoc, litigation-driven fabrication.

First, as set forth in detail in its June 24, 2009 enterprise letter, the Government will prove that Gotti participated, after July 24, 2003, in five distinct categories of crimes, including laundering and illegally re-investing racketeering proceeds from seven separate properties. (June 24, 2009 Enterprise Letter at 2-4). Not only does Gotti bear the burden of proving withdrawal by a preponderance of the evidence at trial, but he also must prove that he withdrew (1) completely and (2) in good faith from the charged conspiracy. See, e.g., United

9

States v. Hamilton, 538 F.3d 162, 173 (2d Cir. 2008) (defendant bears burden of proving withdrawal by preponderance of evidence); United States v. Eppolito, 545 F.3d 25, 41 (2d Cir. 2008) ("any withdrawal must be complete and in good faith") (quoting model jury instructions). Thus, proof that Gotti participated in <u>any</u> of the five specific categories of post-July 2003 crimes that the Government has disclosed defeats the withdrawal defense. Similarly, proof that Gotti received or invested racketeering proceeds from <u>any</u> of the seven listed properties after July 2003 defeats the withdrawal defense. Further, as the Government has previously stated to this Court and in its enterprise letters, it has additional evidence – beyond the specifically-listed crimes– of conduct and statements by Gotti that undercut his withdrawal defense.[4] Gotti strains to argue that the Government somehow represented that it had associational evidence but no evidence of actual post-July 2003 crimes. (Motion at 6 n.7). In fact, as Gotti's own quoted language makes clear, the Government has repeatedly stated that it has evidence of criminal acts by Gotti within the limitations period, <u>and</u> of other acts and conduct that further belie the withdrawal defense.

Gotti's only response to the Government's disclosure of five separate categories of post-July 2003 criminal conduct is to (once again) impugn in conclusory terms the

---

[4] In fact, the Second Circuit has held that, in a racketeering conspiracy case, the Government need not prove that any particular crime occurred within a five-year period: "once the Government met its burden of proof by establishing that the [charged] conspiracy existed, it was entitled to a presumption that the conspiracy continued until defendant demonstrated otherwise." United States v. Spero, 331 F.3d 57, 61 (2d Cir. 2003). The Second Circuit subsequently re-affirmed the Spero presumption of continuity: "Although a substantive RICO charge is barred by limitations as to any defendant unless that defendant committed a predicate act within the five-year limitations period, a RICO conspiracy is complete, thus commencing the running of the five-year statute of limitations, only when the purposes of the conspiracy have either been accomplished or abandoned." United States v. Yannotti, 541 F.3d 112, 123 (2d Cir. 2008) (internal quotations marks and citations omitted). Nonetheless, as discussed herein, the Government will in fact prove at trial that Gotti participated in numerous crimes within the limitations period.

10

Government's motives, and to offer weak factual rejoinders to a small sub-set of the listed crimes.

Gotti points first to the Government's statement at the prior bail hearing before this Court that "there's new evidence that Mr. Gotti had loanshark money out on the street [and] there is new evidence that Mr. Gotti was receiving tribute payments, and that's separate from loansharking." (Motion at 4, quoting Tr. 18). Yet Gotti fails entirely to explain how the Government has failed to back these claims. In fact, the Government has provided the Court and the defense with specifics to support both claims, through the June 24, 2009 enterprise letter. (June 24, 2009 Enterprise Letter at 2-3). Gotti does not contest the fact that this evidence is newly-discovered. Instead, Gotti argues with respect to the ongoing loansharking that the loan was "an interest-free personal loan." (Motion at 7). That claim is difficult to square with the recorded statement by the borrower that Gotti "never gave me a knockdown"; that "I had to keep paying, I was paying forever"; that the borrower "fell a little off the cuff"; and that Gotti's collector said "he's gonna beat up my friends if I don't do the right thing"; and the recorded statement to the borrower, which the borrower adopted, that the borrower "could of went to another family and got it for two."[5]

With respect to the extortion of individuals, the Government has disclosed the names of five different individuals who continued to make regular tribute or protection payments to Gotti after July 2003. Gotti does not dispute his receipt of the payments, but rather counters that some of those individuals were childhood friends, and therefore could not be extortion

---

[5]    As the Government will establish at trial, "knockdown" refers to an arrangement where the borrower is permitted to make smaller interest payments as the outstanding principal is reduced. "Got it for two" refers to a weekly interest rate, or "vig,' of two percent – over 100% annually – which is a common loansharking interest rate and measure.

11

victims. That position it at odds with the law and with common sense: there is nothing mutually exclusive about the appearance of friendship and the existence of an ongoing extortion – particularly in the world of the mafia, and particularly where the friend receiving the payment is far more powerful than the friend making the payment. See, e.g., United States v. Carneglia, 2009 WL 614915 at *7-*8 (E.D.N.Y. March 9, 2009) ("the fact that the giver carries on a 'friendly' relationship with the taker does not negate the essential coercive nature of the nexus"). Moreover, several of the people Gotti casually labels "childhood friends" are in fact longtime participants in crimes committed by the Gambino Family. For example, John Ruggiero – who became a made member of the Gambino Family – was an active participant with Gotti in the charged drug trafficking, the robbery of John Kelley, and the beating of Jimmy D'Ambrosio. (June 15, 2009 Enterprise Letter at 2, 3, 7). Finally, Gotti remains conspicuously silent on the ongoing extortion payments received from Michael Finnerty. In short, the Government has amply backed the statements it made at the prior bail hearing about ongoing loansharking and extortion of individuals, and has provided the Court and the defense with specifics to back those claims.

    Gotti also argues that the Government stated at the prior bail hearing that the evidence of the construction industry extortion was the same as in prior trials. (Motion at 5, quoting Tr. 5). In the enterprise letter, the Government disclosed that it had evidence of Gotti's post-July 2003 participation in the construction industry extortion, particularly with respect to three separate companies. (June 24, 2009 Enterprise Letter at 2). This evidence will come from multiple cooperating witnesses and tape recordings. Some of this evidence was the same as in the prior trials, and other evidence has been obtained since the January 2009 bail hearing. At most, then, Gotti appears to contend that the Government at the prior bail hearing may have

under-represented the strength of the evidence tying him to post-July 2003 construction extortion. Gotti fails to address the merits of that evidence in any manner, with respect to any of the three named construction companies.

With respect to the fourth category of post-July 2003 crimes, the scheme to obstruct justice – by fabricating, and then obtaining mafia approval to use, the withdrawal defense – Gotti argues that the Government attempted to introduce the same evidence before Judge Scheindlin, who precluded the evidence as hearsay. (Motion at 7). First, Gotti's own transcript excerpts make clear that Judge Scheindlin did not rule on the admissibility of the evidence, but rather requested additional briefing from the parties regarding the admissibility of one portion of the evidence, specifically the testimony from cooperating witness Dominick Cicale. (Exh. B, Tr. 3951). Judge Scheindlin also suggested that another portion of the evidence, from cooperating witness Joey D'Angelo, would be admissible. (Exh. B, Tr. 3951; "So the best of it may have been the D'Angelo material, and he'd have to testify to it."). Second, it is difficult to understand how a hearsay objection would stand, given that the evidence consists largely of the testimony of two cooperating witnesses – both of whom were members of the effort to obstruct justice – about their conversations with other co-conspirators, including Gotti, in the course of the obstruction conspiracy itself.

Finally, with respect to the money laundering and re-investment of racketeering proceeds crimes set forth in the enterprise letter, Gotti counters that Judge Scheindlin granted a Rule 29 motion with respect to a money laundering charge in the prior case. (Motion at 7). Judge Scheindlin's ruling related to one specific property, at 216-02 Hempstead Avenue. Judge Scheindlin's ruling also was highly fact-specific, and does not preclude consideration of the laundering in connection with the specified property as an of the object of a racketeering

conspiracy. Most tellingly, Gotti is silent with respect to the six other listed properties, beyond the 216-02 Hempstead property, that Gotti used to hide, funnel, and reinvest mob money, and to support his wealthy lifestyle well after his purported withdrawal.

Even separate and apart from his commission of these listed crimes, Gotti continued to participate in the Gambino Family by, among other things, making and communicating Gambino Family personnel decisions, and by directing the flow and division of certain of the Gambino Family's criminal proceeds and other property, after 2003 and as late as 2007.

After either brushing by or ignoring each piece of the evidence of his continued participation in specified criminal activity, and in the Gambino Family more generally, Gotti makes several claims that he contends support his withdrawal claim. (Motion at 8-13). Gotti has raised these points in prior bail arguments, to no avail, and he points to nothing that has changed about his withdrawal defense since the prior bail hearing.

Further, the vast bulk of the support for the purported withdrawal claim consists of post hoc, self-serving hearsay statements by Gotti himself or by his co-conspirators in the Gambino Family. Those statements by Gotti himself and his co-conspirators are textbook, inadmissible hearsay, as the Government will detail in its motions in limine, which are due July 8, 2009. Moreover, Gotti fails to note that all of the self-serving, conspicuously backwards-looking statements he quotes were made after the recorded meeting on March 14, 2003 between Gotti and Gambino Family attorney and "house counsel" Richard Rehbock. During that conversation, Gotti and Rehbock conceived of the withdrawal defense and discussed the importance of "dropping the seed on the wiretaps" – i.e., declaring in settings likely to be wiretapped that Gotti had withdrawn more than five years earlier, in an effort to propagate and

generate cover for the false withdrawal defense.[6]

Gotti also mischaracterizes the record in a transparent, post hoc attempt to transform his routine guilty plea in 1999 in a fantastical withdrawal from the mafia. Gotti claims that, during a 1999 meeting with John J. Gotti, Gotti informed his father that he wanted to quit the Gambino Family. (Motion at 8). In fact, during that recorded conversation, Gotti and his father have extensive, detailed conversations about Gotti's ongoing plea negotiations, but never once mention the Gambino Family. Indeed, neither Gotti nor his father even acknowledge the existence of the mafia, never mind Gotti's purported withdrawal from it.

Gotti's argument that he has withdrawn, in addition to being flatly contradicted by

---

[6]    The following are excerpts from the March 14, 2003 conversation between Gotti, Rehbock, and Steven Dobies:

> Gotti: It's your job, I discussed it with you Richie . . . you gotta plant a different seed in people's head. If people think I'm going home to be the acting boss or the boss or whatever they may think — I'm finished. I got no shot. I'm never leaving here. . . .
>
> . . .
>
> The door was wide open. The door was wide open to that seed to get planted into their heads. Door was wide open.
>
> . . .
>
> Rehbock: Then other people have to be dropping the seed on the wiretaps. . . . People have to plant the seed on the wiretaps. That's what they have to do.
>
> Dobies: I just gotta keep yelling it into my cellphone — [laughter] "John's moving to Canada when he comes home."
>
> . . .
>
> Rehbock: The third parties and everybody have to say it over the wire.

(Raybrook Recording, March 14, 2003, Session 11).

15

the evidence to be presented at trial, does nothing to lessen the danger he poses upon release. As discussed, Gotti has a staggering, decades-long record of killing and other violence, and he has proven to be a relentless and adept manipulator of the judicial system. Further, as discussed above, Gotti continued to commit numerous, serious crimes both while he was in prison up to 2005, and even after his release, including crimes committed by and with the assistance of Gotti's network of followers and subordinates. The Government also has produced evidence to the defense, and will adduce witness testimony that, notwithstanding any purported withdrawal, various La Cosa Nostra members have eagerly awaited the end of Gotti's judicial proceedings in anticipation of Gotti assisting in and resolving ongoing extortions and collections.

### 3. Risk of Flight

Gotti argues that he is not a risk of flight because of his family and community ties. (Motion at 18-20). Yet Gotti offers absolutely nothing new or different from the facts he has previously argued before this Court on the flight issue, and this Court previously has determined that Gotti is a flight risk. (Tr. 44-45; 47). Indeed, as the Government has previously argued, Gotti faces life imprisonment if convicted here. Gotti's financial capacity plainly remains significant – he continues to live the life of a wealthy man despite never having worked a job – and also largely unknown, as evidenced by the recovery of $350,000 in cash, along with firearms, silencers, and various papers bearing Gotti's fingerprints, from the basement of an associate in 1997. And Gotti retains a network of eager followers – whom Gotti labels childhood friends, and who are nonetheless participants in the Gambino Family as well as specific crimes of violence – to help carry out Gotti's commands. Gotti offers nothing new to address these facts or to upset this Court's prior finding that Gotti poses a flight risk.

### 4.     Right to Counsel

Gotti argues that he has been denied his right to counsel, in violation of the Sixth Amendment, because he has been detained pending trial here. As discussed more fully in the Government's June 26, 2009 response to Gotti's Motion to Dismiss the Indictment, that claim is frivolous. Gotti cites no authority – because there is none – for the proposition that pre-trial detention amounts to a denial of the Sixth Amendment right to counsel.

Gotti also claims he has not been permitted any legal phone calls. (Motion at 15). As the Government has previously informed the Court and the defense after consulting with the MDC: "[A]ll Gotti needs to do is fill out an Inmate Request to Staff Member form and submit it to any member of his unit team. MDC counsel further states that MDC staff have previously explained this prerequisite to Gotti. MDC staff will again approach Gotti and explain this requirement, and provide Gotti with the appropriate form, to ensure that he can make any necessary legal calls." (Letter of June 9, 2009).

### 5.     Eighth Amendment

Gotti claims that his incarceration constitutes cruel and unusual punishment, in violation of the Eighth Amendment, because he has suffered with kidney stones while incarcerated. (Motion at 15-16). That claim trivializes the notion of cruel and unusual punishment. Gotti cites no authority for the remarkable proposition that imprisonment of a defendant with a medical condition – particularly a non-life threatening condition like kidney stones – constitutes cruel and unusual punishment. In any event, when defense counsel previously raised the issue with the Government, the Government coordinated with the MDC to ensure that Gotti continued to receive appropriate medical care. The kidney stones have now passed, according to the MDC.

## C. Conclusion

This Court has already fully considered and denied Gotti's prior request for bail. Gotti remains, as before, a convicted violent felon and admitted, longtime Mafia member and leader. He is charged with a staggering array of crimes including murders, cocaine distribution, extortion, robbery, and obstruction of justice. He has unknown resources at his disposal, a loyal contingent of followers, and a demonstrated ability to tamper with juries and witnesses. Finally, Gotti faces near-certain life imprisonment if convicted.

Nor does Gotti raise anything new in his latest motion. The Government has amply backed up and provided detail on every one of the statements it made at the prior bail proceedings. The Government has now provided the Court and Gotti with specifics on five separate categories of crimes in which Gotti has participated within the limitations period – any one of which overcomes the fabricated withdrawal defense. Gotti conspicuously fails to offer any cogent response to the Government's disclosure of these crimes. For all of the foregoing reasons, Gotti's Motion for Reconsideration of Bail should be denied.

Dated:   New York, New York
         June 30, 2009

Respectfully submitted,

LEV L. DASSIN
Acting United States Attorney

By:   /s/
      Elie Honig
      Jay Trezevant
      Chi T. Steve Kwok
      Assistant United States Attorneys
      Tel: (212) 637-2474/2415
      Fax: (212) 637-0097

## CERTIFICATE OF SERVICE

Elie Honig deposes and says that he is employed in the Office of the United States Attorney for the Southern District of New York.

That on June 30, 2009, he caused to be served a copy of the foregoing Government's Memorandum in Response to Defendant John A. Gotti's Motion to Dismiss byECF and e-mail on:

> Charles F. Carnesi, Esq.
> 1225 Franklin Avenue, Suite 325
> Garden City, New York 11530
> (516) 512-8914
>
> John Meringolo, Esq.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. Section 1746.

_____/s/ _Elie Honig_
Elie Honig

Executed on:  June 30, 2009
              New York, New York